Yes, Gretchen Fusilier on behalf of Pedro Granados Saldana, the appellant and cross appellee in this matter. May it please the court. I'd like to begin my argument addressing the issue of aiding and abetting issue and then the sentencing issue raised by the government on cross appeal, followed by the insufficiency of the evidence to support the drug quantity finding. However, initially, I want to reiterate our position that the government did not adequately preserve its cross appeal issue for appeal of the sentencing issue. The government's objection was at the last minute after it had acquiesced and agreed with the sentencing court to the reduction by 10 months giving credit for adjusting by the 10 months state sentence that had been discharged by Mr. Saldana. The objection was not supported by any legal argument or legal precedent relating to the government's position and as a result, the Well, but well, it I think it's fair to say that the prosecutor might well have been surprised by the issue arising and although the first time around seemed to acquiesce, put the objection on the record pretty clearly in saying a mandatory minimum is a mandatory minimum. The court doesn't have the authority to to sentence beneath that. Why isn't that sufficient to square it up for the district court who acknowledged it and then moved right on? Didn't didn't invite any further discussion briefing or anything. Well, I think it's not sufficient because the only citation provided by the government was the mandatory minimum under 841 B1A and the court of course mentioned 5G 1.3. However, I do believe that in most cases and maybe this is the exception, the district court should have the first opportunity to thoroughly digest the party's positions and then rule on the on the objection. Well, did your client raise that issue? I mean, your client seemed to acknowledge that yeah, there's a mandatory minimum. So 120 months is what it should be. It's not like there's anything for the prosecutor to anticipate or respond to. The district court didn't see collaboration. I mean, I understand. Indeed, I really do understand what the district judge was saying, but I'm hard-pressed to say why it is if your client doesn't present the argument why the government should be expected to respond with chapter and verse. Counsel, in addition to that, didn't someone include, in fact, I may be mistaken on this, my memory was that the prosecutor said that the sentence was discharged, thus framing the issue. Yes, according to what the government said, it refers to paragraph 51 of the pre-sentence investigation report, which indicated that the 10 months served in the state by Mr. Saldana had been discharged. And your honor, I understand that there is a some basis to determine that maybe the government did adequately preserve the issue. But I did want to at least reiterate our position. And if there aren't any other questions or comments regarding that particular issue, I would like to do that. Counsel, I'm curious about your equal protection due process argument because I'm just curious about what is the rationale for distinguishing between discharged and undischarged sentences. Yes, I think, your honor, in looking at the due process equal protection argument, the court in Drake was quite instrumental in our argument and also the case of U.S. Hill cited by the government, which reviewed and discounted some of the attempted justifications for a rational basis. However, under the cases, the distinction between discharged and undischarged sentences creates an atmosphere in the sentencing environment of unfair treatment. And there is certainly under Chapman the direction that once a defendant is convicted, the court is free to impose whatever penalty, as long as the distinctions in the sentencing process are not The distinctions that are set up in the sentencing regimen provides that in an undischarged sentence, a defendant actually would be imprisoned as long as there is an undischarged segment to run concurrent with the federally imposed sentence. As the Drake court pointed out, that does not actually put the defendant who has completely served a sentence in the same position as discounting a mandatory minimum based on time that has already been served. In fairness, I think that if on an undischarged sentence, a sentencing court can say or can take the position that whatever the satisfied term is will reduce the period that you will serve on the federal mandatory minimum. There does not seem to be a rational basis for that, and although the government has presented a couple of scenarios that it advances as a However, I think that with this example that the government provides, if an undischarged sentence is almost completely satisfied, and there may be just undischarged portions to run concurrent with whatever the federal mandatory minimum would be, in this case 120 months, essentially the defendant who might have government situation, the undischarged sentence, the defendant serving the undischarged sentence, would be benefited. I don't believe that that is the type of sentences. The Hill case points out that if a court is concerned with the uncertainty, then with the defendant who has satisfied or has discharged the state, sentence, there would be no difference as far as the certainty of sentence, because the sentence has already been served, and so the federal sentencing court will already know how much of a sentence would be served. Most importantly, perhaps, is that it would be the aggregate of the federal sentence, along with the adjustment for the completed state sentence, that should be more important. I would like to address the aiding and abetting argument, because the fact that an aider and abetter is placed in the same legal jeopardy as the principal, I don't believe that Mr. Saldana's marginal conduct on either July 23rd or September 30th should place him in such a situation. I would like to point out that on July 23rd, Mr. Saldana, who is homeless and lived and slept behind 601, which was directly in front of the apartment complex at 538, referred to as the jungle, he had not prearranged to be on the street to meet the CW, the cooperating witness, whose identity is subject to a protective order, so I won't mention her name, but this was not a prearranged event. The CW, the cooperating witness's statement to him, would you please let this person, who we now know is the informant, know that I'm behind 601. She did not ask him to function as a lookout, she didn't request that he do any kind of screening of the informant when he arose, so she was actually asking for a favor. This type of event dictates against a finding that he associated himself with the transaction or that he participated by sharing in this transaction between the cooperating witness and the informant. Moreover, I think that the troublesome element of whether or not he had a shared intent with the cooperating witness is not established by evidence beyond a reasonable doubt. The statement itself is not a direct indication of what his intent is, and one way of establishing a person's intent would be circumstantially by determining whether or not he had some stake or benefit in the transaction. That was not established in this case, and therefore when the informant appeared and he was outside, and Mr. Saldana had forgotten actually that the cooperating witness had asked him to tell him that she was behind 601, he just engaged in casual conversation with the informant, and then he remembered and he went back and he checked, but this in no way was actions designed to ensure, which I think is the language that the government uses, to ensure the success of this drug transaction. Moreover, on the September 30, 2015 event, we have the same type of situation. Mr. Saldana was on the street, he hung out, and it's no more than the court said in Hernandez that mere presence around drug activity does not equate to criminal liability. However, on the 30th of September, when the informant asked for two ounces, Saldana merely indicated to call him, which was an affirmative declaration that the informant had to look elsewhere for this transaction. Mr. Saldana, he did direct the informant to Mr. Villalba, who was across the street, and I don't believe that that rises also to the dignity of some kind of designated or designed conduct that would ensure the success of any type of future deal that Mr. Ochoa and the informant might enter into. And I see that I am over my time. All right. Well, thank you, counsel. We obviously absorbed all the arguments from your briefs and reviewed the record as well. Thank you so much. So we haven't lost any of your arguments by not reaching them today. Thank you so much. Thank you. Ms. Reis? Good morning, Your Honors. Julia Reis for the United States. And I'll go ahead and start as well with the issue of the credit for the fully discharged sentence. First, the government did preserve its objection to the below minimum sentence in this case. I would direct the court's attention to ER 21, where the government specifically pointed out to the court that the sentence was fully discharged and, as a result, that the district court lacked discretion to go below the mandatory minimum. And, Judge Clifton, you got it exactly right. The government wasn't on notice before it got into that hearing that the court was even considering giving credit for a fully discharged sentence. And, in fact, before going into the hearing, Mr. Saldana's own counsel had repeatedly recognized that the 120-month mandatory minimum sentence would apply in this case and urged the court to impose that sentence. So the government has preserved its objection to the below minimum sentence for appeal. There's simply no requirement that the government cite specifically particular statutory or other guidelines provisions that would preclude the credit that Mr. Saldana received. And here, the statutory and guidelines framework does preclude the credit that Mr. Saldana received. The district court imposed the below minimum sentence under the offices of Section 5G 1.3b. And, as this court held in Turnipseed, 5G 1.3b simply does not apply to fully discharged sentences like the one that was before the district court here. I doubt that that comes as a big surprise or would come as a big surprise to the district judge, who was a very experienced judge. And why do you think he did what he did? Your Honor, outside the record, obviously, the district court didn't offer any explanation for it besides referencing 5G 1.3b. However, I will say this is not the first affirmative government appeal from this district court imposing below minimum sentences recently. We've also pursued appeals of, and I believe one other case where the district court actually afforded the individual or directed the BOP to award the individual credit. And that was reversed in an unpublished disposition based on the disallowance of courts ordering the BOP to give credit. I believe we identified that as a related case. Isn't the problem here that this charge and the mandatory minimum results in a 10-year sentence for somebody who's selling kind of the lowest level street dealer $20 bags? Something does not seem right about that. Particularly in an era when the First Step Act and so forth, Congress has seen the cost of heavy sentences and is trying to roll back in the other direction. So I'm not surprised the district judge scratches his head and says, well, this is a long, long time for low-level activity. Let's see if we can try to offer a little bit of correction. And here we are. And the government elects to cross appeal. I mean, really? So I have a couple of responses, Your Honor. First, Mr. Saldana's role in the conspiracy, he may have been a low-level dealer, but he was a low-level dealer day in and day out. And the evidence is that he was involved in the conspiracy for many months. And so the inference is that he did actually distribute quite a large quantity of methamphetamine over his entire time period being involved in the conspiracy. But as to the issue of is this an appropriate sentence, ultimately that's a separation of powers concern. The ultimate decision of what length of sentence is warranted for somebody who distributes over 50 grams of methamphetamine is up to Congress. And Congress may very well change the law and change the mandatory minimums, but they haven't yet. And that's Congress's prerogative. It's also your office's prerogative in terms of making charging decisions. And I can speculate, and it's pure speculation. It doesn't have a legal impact. It may have been this started down this road, and this wasn't the key guy in the conspiracy. And maybe there was hope that it would be rolled up and so forth. But at the end of the day, this looks like an awfully heavy charge and sentence for somebody who is at the end of the distribution chain. And there may be nothing that we can do about it, and maybe nothing at this point that your office can do about it. But I think it is the source of a lot of concern, not just in Congress, but here. And I'm not saying that you made the charging decision, but at some point, at the end of the day, there are consequences. And one of the consequences here is that we have a 10-year sentence for somebody who's a street dealer. End of editorial. I do. Counsel, I'm trying to figure out the logic of the distinction for allowing reduction for undischarged, but not allowing it for discharged sentences. Can you help me with that? Yes, Your Honor. And I will say, the government set forth several bases for distinguishing between discharged and undischarged sentences in its brief. I think some of the most compelling ones, or the one that I find particularly compelling, is this issue of allowing individuals to bank time. By precluding credit for a fully discharged sentence, the sentencing scheme basically disincentivizes somebody from rejoining a conspiracy upon serving completely a sentence for related conduct. If you didn't have that, then you could have a situation in which every time somebody serves some marginal sentence on a related state conduct, they would have ever greater incentive to rejoin the conspiracy upon their release. So let's say if I was going to join a drug distribution conspiracy, for example. At the very beginning, I would know, perhaps, that I faced a 10-year mandatory minimum. But if I was arrested and I served a two-year state sentence, suddenly now I say, ah, I've got those two years done. Now I've only faced eight years. The disincentive that the 10-year sentence originally supplied to my participation in the scheme is reduced. And so that issue of banking time, I think, does encourage individuals or discourage individuals from rejoining conspiracies upon their release from custody on related conduct. That cuts both ways. The government could reserve on its charging until after the sentence is served just as easily as the defendant could get credit for discharged time. So I think that sort of the issue of manipulating when a charging decision is made, I think that that is a concern. I don't think that that's a concern that totally eliminates the concern that the government has identified, which is, again, the disincentive, disincentivizing individuals to rejoin the conspiracy upon their release from custody. And I think I want to emphasize here what Mr. Saldana's burden is on his equal protection claim. He bears the burden of negating every conceivable rational basis for the distinction. It isn't enough that it sometimes will produce an arguably unequal or unfair result. What he bears the burden to do is to explain that in every single factual scenario, it would not have a rational basis. And the banking time example that I just gave, that is a factual scenario where it is a rational distinction to draw because it disincentivizes further misconduct. Now, the other thing that the disallowance of concurrent sentencing or credit for discharged sentences is that it respects the increased deterrent value of continuous prison terms. Now, Congress has decided that a 10-year prison term is warranted for distribution conduct involving more than 50 grams of methamphetamine. And Congress could rationally conclude that that 10-year sentence is forceful partly because it is extremely disruptive to someone's life. And given that disruption, that length of disruption further disincentivizes and deters someone from future misconduct and deters someone else who sees that length of sentence from joining a conspiracy in the first place. Now, that multiple... I'll give you the 10 years for street dealing is disruptive. Yes, and I hear the court's concern about the charging decision. But again, ultimately, the charging decision, it's been made. It's Congress's purview to establish what the sentences are. The prosecution's purview to decide what charges to bring. And the court's purview simply to interpret the law and apply it to the facts of the case. And here, I think that the court really just doesn't have discretion to challenge the prosecution decision that has been made. And given that Congress could rationally distinguish between discharged and undischarged sentences, Mr. Saldana simply cannot prevail on his equal protection type challenge to the prohibition on concurrent sentencing or credit for fully discharged sentences. Out of curiosity, there are several main or more culpable conspirators in this case. Did they all plead guilty and this was the last one to go to trial? I believe that these... I candidly was not the trial prosecutor, so I'm not 100% certain on the answer to that question. I believe that these were the last two defendants in this indictment. The only two defendants in this indictment who did not plead guilty. Okay. And do you know what the sentences were for the people who pled guilty? I do not know what the sentences were. And several of the other individuals were obviously differently situated, including, for example, the person who cooperated and ultimately testified in this trial. But I'm not sure of what the sentences were for the other individuals that were involved in the conspiracy. We have reason to be concerned that the person who's got the longest sentence is the person at the end of the distribution chain in this particular case? I don't believe so. I don't believe so. I can check on that and I can submit a letter to the court. I believe that there were other individuals who were subject to the 10-year mandatory minimum and received at least that. After pleading? I'm sorry? After pleading guilty? They received that? I believe so. Again, I'm not certain. I would have to check. But I'm not certain what the sentence was that was imposed on the other co-defendants. I'll make one observation without asking for a response. You argue, and I think with some force, that it's not our job to do something about the problem that we have identified. And apparently all three of us share to at least some degree. And I accept as a given. I mean, you weren't the person that made the charging decision, but your office did. And your office still has the prerogative of dropping the cross-appeal. And I'm wondering, should we pause for making a decision to give your office time to consider whether it wants to continue pursuing its cross-appeal? I obviously cannot answer that question. But I can take it back to my supervisors. But we thought hard about pursuing this appeal in the first place, and I will say it has been approved by the Solicitor General. And I think the reason that it's been approved by the Solicitor General, it relates to, again, the respective roles that everybody plays in the process. I want to say that it's the Department of Justice that plays a role and has exercised its judgment in a certain way that strikes me as questionable. And so that's why I raise the possibility of the Department of Justice, whatever office within the department, saying, well, you know, under the circumstances, maybe we don't need the extra, what is it, 10 months? Yes. So I just raise that as a possibility and have no say over the decision. But people who do have a say might want to look at it again. I understand, Your Honor. Ms. Reese, can you tell me, give me a few bars on count nine. As I read that, the defendant directed the CIA to the 601. That was all he did. How is that aiding and abetting? So, this is for the July 2015. July 23rd. Yes, involving one ounce of methamphetamine purchased by another co-conspirator in the conspiracy. So what Mr. Saldana did there, he did do, just to grasp on the language that Ms. Facilier used, he did do a favor for the cooperating witness. The cooperating witness came out and she asked Mr. Saldana to direct the confidential informant to her and she said that she would be parked behind the complex because of police activity going on in the area. And that's at ER 252. And she says he's here, whoever the purchase was ultimately made from, all that Saldana said was he's at 601, right? So, actually what Saldana did was he went and made sure that the cooperating witness was still there and ready for him. And then when the time came, Mr. Saldana directed the informant to where the cooperating witness was waiting and said they can give it to you there. And that is evidence that, and that's at ER 303, they can give it to you there. That's evidence that Mr. Saldana knew that what was going on was a drug deal and that Mr. Saldana knew that what he was doing was directing the confidential informant to the cooperating witness for the purpose of closing that drug deal. And if there are, I also, just quickly, the evidence on the aiding and abetting must also be viewed in conjunction with the other evidence and the other testimony that was rendered about Mr. Saldana's role generally in the conspiracy. And there was a cooperating witness who described in detail the kind of dual role that Mr. Saldana played in the conspiracy. And that also bears on the sufficiency of the evidence supporting the substantive convictions for aiding and abetting liability. I'm happy to address any other questions that there may be, particularly on the issues that we didn't address, but otherwise I'll submit on the briefs. All right. Thank you, Counsel. Ms. Fusiliere, I'll give you a minute to respond. Thank you very much, Your Honor. I would like to indicate that you asked about the sentences of codefendants. I do know that Mr. Hernandez, who is called Casillas, who sold drugs, methamphetamine, several times to the informant, he received a sentence of 36 months and five years supervised release. Arcia, who also sold drugs, methamphetamine, several times to the CI, he received a sentence of 48 months with a five-year concurrent supervised release. And Mr. Ochoa, who was the kingpin, he did receive more. He received 240 months. But among the three, Mr. Saldana, Arcia, and Casillas, Mr. Saldana is the least culpable in this event. He was homeless, he hung out on the streets, he had no place else to go, he had no car, he had no phone. As the PSR points out, he had been addicted to drugs since 1995. He had been addicted to methamphetamine. From the testimony of the cooperating witness, he would make excuses why he was not able to provide her or Ochoa with their cut of the methamphetamine. And she did know that he was an abuser of methamphetamine. I also want to point out that at the sentencing, the government did not object to a 10-month reduction of the 120-month sentence. The government actually asked the court, when the court said it would be a departure, not an adjustment, and the government's response was, the government believes that's correct, your honor. And then the defense attorney indicates that it was his inadvertence not to bring up the reduction issue. But the government also indicated, just to clarify, this is the government speaking, your honor, just to clarify, we understand the sentence would still be 120 months, but would receive credit for the time when the court is imposing the sentence, which would have been the 10-month state sentence. So the government's position is, I think, questionable. And to answer why would Judge Otero consider an adjustment, he did say on the record, quote, it appears that Mr. Saldana has a long history of substance abuse himself, and he was a low-level drug dealer. And if the court had discretion, it would sentence him to less than 120 months. Well, under 5K2.23, as we argue in our briefing, the court does have discretion on a related charge, if at the time of sentencing, Mr. Saldana's state sentence was undischarged. So there is some discretion that is given to the court. And when the government indicates that Mr. Saldana knew that a drug deal was going on, well, that doesn't make him an accomplice or an aider and a better. Certainly, courts have indicated that even one charge as a co-conspirator, it may be imprudent, but being close to and present at the location of a drug transaction does not implicate that person as a co-conspirator. And I would suggest that in this case, Mr. Saldana had no reason to know what the CI and the cooperating witness actually had decided on. I think it could have been a good assumption on his part that he was there to buy drugs, but that's an assumption, it's not supported necessarily by the evidence. Thank you very much, Counsel. Thank you so much, Your Honors. United States v. Renato Saldana is submitted. We previously submitted Blackburn v. Walmart, and so this session of the court is adjourned for today. Thank you, Counsel. Thank you. This court for this session stands adjourned.
judges: Wardlaw, Clifton, Hillman